COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2026AP1078**

Cir. Ct. No. 2024TP153

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.L.P., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

S.G.,

      RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed.*

¶1 COLÓN, P.J.[1] Stephanie appeals from the order of the circuit court terminating her parental rights to her son, David.[2] Stephanie challenges the sufficiency of the evidence supporting the circuit court's findings that (1) the Division of Milwaukee Child Welfare ("DMCW")[3] made a reasonable effort to provide her court-ordered services, and (2) Stephanie failed to assume parental responsibility. For the following reasons, we affirm.

## BACKGROUND

¶2 David was born in June 2023. At that time, DMCW was actively providing Stephanie with services related to the removal of a different child from her care. Shortly after David's birth he was placed in out-of-home care under a temporary physical custody order due to concerns about Stephanie's ability to provide care and domestic abuse. David was subsequently found to be a child in need of protection or services ("CHIPS"). A CHIPS dispositional order was entered establishing his out-of-home placement, the conditions Stephanie was required to meet before David could be safely returned to her care, and requiring DMCW to make reasonable efforts to provide Stephanie with parenting classes, therapy, home management, and domestic violence counseling.

¶3 On August 6, 2024, the State filed a termination of parental rights petition, alleging as grounds for the termination that David remained a child in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of reading and to protect the confidentiality of this matter, we refer to the family using pseudonyms. *See* WIS. STAT. RULE 809.19(1)(g).

[3] Formerly known as the Division of Milwaukee Child Protective Services.

need of protection or services under WIS. STAT. § 48.415(2) ("Continuing CHIPS") and that Stephanie failed to assume parental responsibility under § 48.415(6).[4] Stephanie contested the petition and the case proceeded to a court trial.

¶4 At trial, the circuit court heard testimony from Stephanie's three case managers, Stephanie, and the foster parent. Stephanie's first case manager explained that while Stephanie was pregnant with David, he referred her for a psychological evaluation. A psychologist examined Stephanie and summarized her findings and recommendations in a psychological evaluation report (the "Report"). Stephanie was diagnosed with a mild intellectual development disorder and an unspecified adjustment disorder. In the Report, the psychologist recommended that "[s]ervices should be accommodated for [Stephanie's] cognitive difficulties. She should participate in parenting, anger management, and domestic violence classes, but concepts should be broken down, repeated, and there should be opportunities for applied practice in a safe and supportive manner."

¶5 Stephanie's case managers explained that as a result of Stephanie's cognitive limitations, Stephanie was involved in the Comprehensive Community Services program ("CCS"), which was described as "case coordination where [participants] get a case manager and they set [them] up with services depending on what [their] needs are in the community." This program is specialized for adults "who are cognitively delayed or have any sort of delays that require them to

---

[4] The State also sought to terminate David's father's parental rights which are not at issue on this appeal and will not be addressed further.

have assistance." CCS provided Stephanie with services including housing assistance, education and career assistance, a financial payee, and therapy.

¶6 For parenting services, DMCW referred Stephanie to one-on-one parenting assistance, "where things can be repeated to make sure she understands and comprehends what they taught her." DMCW also referred Stephanie to a mobility mentoring program to provide her with further assistance with budgeting, housing, and parenting.

¶7 Regarding domestic violence prevention services, Stephanie's first case manager explained that he made a referral for those services; however, there was inconsistent contact between Stephanie and the provider. DMCW also asked Stephanie's individual therapist through CCS to focus on safe relationships, domestic violence, and anger management. Stephanie later completed a domestic violence counseling class in March 2024 through the Sojourner Family Peace Center ("Sojourner"). Stephanie's most recent case manager explained that DMCW only provided Stephanie contact information and encouraged her to call Sojourner because Sojourner does not accept referrals and is a client-driven program.

¶8 Stephanie completed the one-on-one parenting class and her first case manager observed some improvements; however, he testified that there were still concerns regarding Stephanie's lack of engagement and parenting during visits with David. Throughout this matter the subsequent case managers continued to have those concerns, shared them with Stephanie, and testified that Stephanie did not show any further improvement. For example, Stephanie's most recent case manager testified that Stephanie still needed prompting from visitation workers to

4

manage David's basic care, like changing his diaper, and visitation workers have still needed to intervene when there were safety threats.

¶9 Stephanie was discharged from multiple visitation agencies for missing too many scheduled visitations with David, and DMCW made referrals to new agencies. With the most recent visitation agency, Stephanie's attendance had started to improve. However, Stephanie did not progress beyond fully supervised visits.

¶10 After considering all of the evidence, the circuit court found that the State had proven both grounds for termination, found Stephanie unfit, *see* WIS. STAT. § 48.424(4), and, after a dispositional hearing, found that it was in David's best interests to terminate Stephanie's parental rights. *See* WIS. STAT. § 48.427(3). Stephanie appeals.

## DISCUSSION

¶11 Stephanie argues that there was insufficient evidence supporting the circuit court's findings as to both of the State's alleged grounds—Continuing CHIPS and failure to assume parental responsibility—for the termination of her parental rights. We disagree.

¶12 The State has the burden to prove every element of the grounds it alleged by clear and convincing evidence. *See St. Croix Cnty. DHHS v. Michael D.*, 2016 WI 35, ¶28, 368 Wis. 2d 170, 880 N.W.2d 107. We review a challenge to the sufficiency of the evidence by examining whether there is any credible evidence to sustain the decision. *Id.*, ¶29. We review this question independently and "consider the evidence in the light most favorable" to the decision. *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶¶17, 39, 333 Wis. 2d 273, 797 N.W.2d 854.

¶13     In order to establish the Continuing CHIPS ground, the State was required to prove that: (1) "[David] has been adjudged to be a child … in need of protection or services and placed, or continued in a placement, outside his … home pursuant to one or more court orders"; (2) "[DMCW] … has made a reasonable effort to provide the services ordered by the court"; (3) "[David] has been placed outside the home for a cumulative total period of [six] months or longer"; and (4) "[Stephanie] has failed to meet the conditions established for the safe return of [David] to the home."  *See* WIS. STAT. § 48.415(2).

¶14     Stephanie does not contest that she failed to meet the conditions required for David's return to her care.  She only challenges the evidence supporting the second element—whether DMCW made a reasonable effort to provide her the court-ordered services.  A "'reasonable effort' means an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child, … the level of cooperation of the parent … and other relevant circumstances of the case."  WIS. STAT. § 48.415(2)(a)2.a.  We examine DMCW's efforts to provide services in light of Stephanie's cognitive limitations.  *See* ***State v. Raymond C.***, 187 Wis. 2d 10, 15, 522 N.W.2d 243 (Ct. App. 1994).

¶15     Stephanie argues that DMCW's efforts were not reasonable because it failed to accommodate her cognitive limitations.  Specifically, Stephanie argues that the Report was never shared with her service providers which forced Stephanie "to diagnose and articulate her own need for specialized cognitive accommodations."  We disagree.  It is unclear from the record whether DMCW provided a copy of the Report to all of Stephanie's service providers.  The first

case manager testified that he could not recall whether he gave her service providers a copy.[5] Regardless of whether the Report was shared, the evidence supports that DMCW accommodated Stephanie's cognitive limitations when providing services.

¶16 Stephanie was involved in CCS, a program specialized for adults with cognitive delays, which provided Stephanie with services including housing assistance, education and career services, and a financial payee. CCS also provided individualized therapy which, upon DMCW's request, was focused on helping Stephanie with identifying safe relationships, domestic violence, and anger management. Furthermore, DMCW specifically tailored its referrals around Stephanie's limitations. Her first case manager testified that he had initially planned to refer Stephanie to group parenting assistance, but made a referral to a one-on-one program instead in light of the recommendations in the Report so that "things can be repeated to make sure she understands and comprehends what they taught her."

¶17 Stephanie next argues that DMCW did not make a reasonable effort to provide her services because it did not provide new referrals for services when Stephanie failed to make improvements. Stephanie points to the lack of additional referrals following a domestic violence incident in May 2024 involving David's father and a relative's infant that took place in Stephanie's home. We disagree.

_____

[5] We note that Stephanie relies on the fact that the domestic violence class through Sojourner was client-driven so the Report would not have been shared by DMCW, and her second case manager's testimony that Sojourner's awareness of the Report would have been helpful. Given that DMCW also provided Stephanie access to domestic violence counseling through CCS therapy, which was specialized to address her cognitive limitations, we are not persuaded that solely because Sojourner was not informed of the recommendations in the Report that DMCW failed to make a reasonable effort to provide her services.

¶18    The lack of new referrals for further domestic violence services after that incident does not establish that DMCW failed to make a reasonable effort to provide Stephanie with the court-ordered services.   Aside from the domestic violence class she had already completed at that point, Stephanie also had ongoing access to one-on-one domestic violence counseling through her CCS therapist. DMCW had encouraged Stephanie to go to therapy through CCS once a week; however, Stephanie only went monthly and her attendance was inconsistent. DMCW was only required to make a reasonable effort to provide Stephanie with the court-ordered services.  *See* WIS. STAT. § 48.415(2)(a).  The record shows that DMCW did so.

¶19    We conclude that the evidence supports that DMCW made a reasonable effort to provide Stephanie with the court-ordered services.  Therefore, we reject Stephanie's argument that the State failed to present sufficient evidence to support the Continuing CHIPS ground.  Furthermore, because the State only needs to prove one ground for the termination of parental rights, we do not address whether the State presented sufficient evidence to prove that Stephanie also failed to assume parental responsibility.  *See **Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed.").

*By the Court.*—Order affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.